No. 23,427.

JAMES B. DILL, *Appellee,* v. THE KANSAS CASUALTY AND SURETY COMPANY, *Appellee,* and THE CONTINENTAL CASUALTY COMPANY, *Appellant.*

No. 23,428.

THOMAS G. FINN, *Appellee,* v. THE KANSAS CASUALTY AND SURETY COMPANY, *Appellee,* and THE CONTINENTAL CASUALTY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. ACCIDENT AND HEALTH INSURANCE — *Liability of Reinsurance Company — Rulings on Motions and Demurrers—No Error.* The record in the action—involving the liability of a casualty insurance company on one of its policies—examined, and no error found therein respecting certain criticized rulings on motions and demurrers.

2. SAME—*Refusal of Certain Instructions and Special Findings Not Error.* Under all the evidence it was not error to refuse the requested instructions and special questions concerning which complaint is made, touching the time the plaintiff's disability began.

3. SAME—*Motion to Strike Cross-petition from Files Denied. Held,* that the trial court properly denied the motion to strike the cross-petition of the Kansas company from the files.

Appeals from Wyandotte district court, division No. 3; WILLIAM H. Mc-CAMISH, judge. Opinion filed January 7, 1922. Affirmed.

*J. E. McFadden, O. Q. Claflin, jr.,* both of Kansas City, and *J. C. Rosenberger,* of Kansas City, Mo., for the appellant.

*J. O. Emerson, David J. Smith, Fred Robertson, R. J. Higgins,* and *E. M. Boddington,* all of Kansas City, for the appellees.

The opinion of the court was delivered by

WEST, J.: In No. 23,427, James Dill sued the two casualty companies, alleging that the Kansas Company issued a policy to him in January, 1917, insuring him against bodily injury and disability from disease or illness, and that on May 5, 1919, The Continental Casualty Company contracted to assume the obligations of the Kansas Company under such policy on account of loss of time from sickness beginning subsequent to May 5, 1919; that afterwards, on June 7, 1919, the plaintiff became afflicted with an illness which disabled him from performing his duties for a period of twenty-six and three-sevenths weeks, and he asked judgment against both companies for $900.20.

The Continental Company's contract attached to the petition certified that it had "assumed all obligations of The Kansas Casualty and Surety Company, under policy of above number, on ac-

count of losses resulting from accidental injury occurring subsequent to 12 o'clock noon (standard time) at residence of insured on May 5, 1919, and on account of loss of time from sickness (providing said policy includes sickness insurance) commencing subsequent to said time."

The Continental Company answered alleging that any loss suffered by plaintiff on account of sickness was from sickness which began before 12 o'clock noon, May 5, 1919, and for which it was not liable.

The Kansas Company answered by way of cross petition, alleging that the Continental Company on May 5, 1919, reinsured the plaintiff under the policy in question, and if the plaintiff became afflicted with an illness which disabled him from performing any of his duties as fireman, the date of such affliction was subsequent to 12 o'clock noon of May 5, 1919, and prayed that judgment be rendered against the Continental Company, and that the Kansas Company be relieved of all liability under the policy, and if judgment be rendered against the Kansas Company and the Continental Company, that the Kansas Company have judgment against the Continental Company and be adjudged as surety only under the policy. Attached to this cross petition was a copy of the contract of reinsurance dated May 5, 1919, between the two companies containing this provision:

"The Continental agrees to pay all valid claims of accident and health insurance which may hereafter arise on the said reinsured policies and which are also based upon accident occurring or sickness commencing subsequent to the time of reinsurance as stated in the preceding paragraph. The Kansas Casualty agrees to pay all other valid claims now existing or which may hereafter arise on said policies for accident or disability sustained prior to the effective date of this contract."

The preceding paragraph referred to fixed 12 o'clock noon, May 5, 1919, as the date of reinsurance.

Various motions and demurrers were filed and overruled which we do not deem necessary to notice further than to say that no material error was committed in respect thereto.

The Continental Company requested an instruction that if the sickness began prior to May 5, 1919, it was not liable and asked that special questions be submitted as to whether the sickness was the same for which the plaintiff was operated on on June 19, 1919, a continuation of the same sickness and condition for which he was treated by Doctor Stillwagon early in February, 1919. These re-

quests were refused and the court of its own motion submitted question No. 5 to be noticed presently.

The jury returned a verdict against both companies for $810, and the following answers and questions:

"1. Was plaintiff sick as a result of gall stones during the fore part of February, 1919? Ans. No.

"2. Did plaintiff have gall stones on and prior to the 5th day of May, 1919? Ans. No.

"3. Did the plaintiff suffer a second attack as a result of gall stones on June 7, 1919, which resulted in an operation? Ans. No.

"4. Was the plaintiff operated on for gall stones on June 19, 1919? Ans. No.

"5. When did plaintiff's illness or disease wholly and entirely disable and prevent him from performing any and every kind of duty pertaining to his occupation? Ans. June 7, 1920 [1919]."

It is stated in the brief that the court told the jury to return a verdict against both companies for whatever amount they found was expended by the plaintiff for hospital expense, not exceeding the sum of $13.25 a week for not more than ten weeks, for the number of weeks the plaintiff was in the hospital, and also $26.50 a week for the time he was wholly and entirely disabled from performing every kind of duty pertaining to his occupation, not to exceed fifty-two consecutive weeks, and not to exceed the sum of $900.20, and that it was afterwards charged that as the counsel for the plaintiff had admitted that he only proved damages for $810, including interest, that sum was all he could recover. The jury found in favor of the plaintiff against both companies and for the Kansas Company against the Continental Company.

The Continental Company alone appeals and makes fifteen specifications of error, and states in its brief that it relies upon twelve of them. The main complaints are, error in rendering judgment against the Continental Company, overruling the motion to strike out answers to special questions and particularly question No. 5, and giving and refusing instructions already referred to. Counsel say in their brief:

"All of these specifications of error, involving as they do the same basic proposition, namely, the trial court was in error in its theory of the law applicable to this case and the principles involved herein, will be considered under the same general heading."

The Continental Company requested this instruction: "If you find from the evidence that the sickness which resulted in loss of time, for which plaintiff sues herein, commenced prior to May 5,

1919, then I instruct you that the defendant, Continental Casualty Company, is not liable and your verdict will be for said defendant," which the court refused. Also the following special question: "5. Was the sickness for which plaintiff was operated on on June 19, 1919, a continuation of the same sickness and condition for which he was treated by Doctor Stillwagon early in February, 1919?" which the court refused to give, and of its own motion submitted the following special question: "5. When did plaintiff's illness or disease wholly and entirely disable and prevent him from performing any and every kind of duty pertaining to his occupation?"

Attention is called to the provision that the Continental Company should be liable only for sickness beginning after May 5, 1919, and it is insisted that whatever loss the plaintiff suffered was from sickness which began before that.

The Kansas policy provided that if during its term the insured should contract any disease or illness not thereinafter excepted for which he should be treated by a legally qualified physician and which would prevent him from performing the duties pertaining to his occupation, the company would pay him the weekly indemnity specified. Afterwards, when the Continental Company made its contract of reinsurance it provided that it should take effect May 5, 1919, and agreed to pay—

"All valid claims of accident and health insurance which may hereafter arise on the said reinsured policies and which are also based upon accident occurring or sickness commencing subsequent to the time of reinsurance as stated in the preceding paragraph. The Kansas Casualty agrees to pay all other valid claims now existing or which may hereafter arise on said policies for accident or liability sustained prior to the effective date of this contract."

Counsel say:

"It will thus be noted that by the contract the Continental Company was not liable under any of the policies except in respect to 'accident occurring or sickness commencing subsequent to' May 5, 1919, and it is hardly to be supposed that it would have entered into the contract except for such stipulation restricting its liability."

When the sickness did begin was a question for determination from the evidence. Nothing was said in the instructions as to this date so far as they appear in the record. The jury answered these questions:

"1. Was the plaintiff sick as a result of gall stones during the fore part of February, 1919? A. No.
"2. Did plaintiff have gall stones on and prior to May 5, 1919? Ans. No."

Why this was not shown by abstract or counter abstract, leaving us to search for it in the brief, does not appear.

The plaintiff, Finn, testified that he was ruptured on October 5, 1919, and was operated on next day, went home and was unable to do any work until December 1, when he went back to work. There appears in the abstract no evidence to the contrary.

The plaintiff, Dill, testified:

"I had a little spell I think sometime in February. . . . Dr. Stillwagon did not tell me in February, 1919, that I was afflicted with gall stones. The question was not discussed at that time. At the time Dr. Stillwagon treated me early in February it was at my home. I don't know what was the matter with me."

He further testified that he had no recurrence of that pain from February down to the 7th of June. The pains in June were practically continuous.

Doctor Stemen testified that he was one of the surgeons who operated on Mr. Dill in June.

"We found a very much distended gall bladder with numerous gall stones, I don't know how many, I counted myself up to 200 and stopped. We opened the gall bladder, removed the stones and put in drainage.

"Q. Are you able to give us an estimate of the probable length of time those gall stones had been there? A. That is problematical. I have seen gall stones in infants or children of 16; I have seen them in the aged of 87 . . .

"Q. Could this condition have formed within a period of four an a half months? A. I don't think so.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. You are positive, however, that the quantity and quality of the stones that you found here could not have been formed within a period of four months? A. It is very doubtful—I do not believe it would be possible for that number of stones to be formed in that length of time.

"Q. A man who has an acute attack of gall stones, would you call him a sick man? A. Yes, sir."

It appeared that Doctor Stillwagon had in March diagnosed the plaintiff's trouble as gall stones, but he was reluctant to state definitely his views at the time of the trial.

Doctor Smith swore that he made a diagnosis in June and found symptoms of gall stones; thought these could have been formed in a period of two to three or four months. By the symptoms and history of the case he suspected gall stones covering this period.

The most all this shows or tends to show is that in February the plaintiff had a temporary sick spell from what may have been gall stones. But the sickness which occurred in June was an attack

chronologically unrelated to the spell in February, and one that occurred after weeks of regular work. So, it is impossible to find anything in the record indicating that the plaintiffs or either of them were seeking to recover on account of loss of time from any sickness prior to May 5, 1919. This being true, no error occurred in refusing the requested instruction and special questions.

Although somewhat aside from the "basic proposition" the brief contains a complaint because the court did not strike the Kansas Company's cross-petition from the files. But we see no abuse of discretion in permitting it to remain on file.

Finding no material error, the judgment is affirmed.

---

### OPINION DENYING A REHEARING.

#### (Filed March 11, 1922.)

The casualty company has filed one copy of motion for rehearing.

Complaint is made that it was called a "prudential" insurance company. We have changed the word to "casualty."

The opinion states that answers to certain questions were not shown by the abstract or counter abstract. The questions without answers appear at one place in the abstract, and with answers at another, no reference to the pages of the abstract being made in the briefs as required by rule 6.

The motion for rehearing is denied.